# In the United States Court of Federal Claims

No. 23-499

Filed: January 14, 2025

---

**RICKEY A. HYATT and BARBARA HYATT,**

       *Plaintiffs,*

**v.**

**THE UNITED STATES,**

       *Defendant.*

---

*Lindsay S.C. Brinton*, *Meghan S. Largent*, and *Michael Armstrong*, Lewis Rice LLC, St. Louis, Missouri, with *J. Nathan Duggins, III*, *Michael S. Fox*, and *Jason B. Sparrow*, Tuggle Duggins, P.A., Greensboro, North Carolina, for Plaintiffs.

*Peter W. Brocker*, Natural Resources Section, with *Todd Kim*, Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

      The Court has already described this litigation as "a typical rails-to-trails action where the United States infringed Plaintiffs' property rights for a public improvement project." *Hyatt v. United States*, 170 Fed. Cl. 417, 429 (2024); *Nicholson v. United States*, 170 Fed. Cl. 399, 411 (2024).[1] In cases like this, the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA") provides a vehicle to reimburse reasonable fees and incurred expenses. This mechanism is crucial in ensuring access to justice for property owners whose rights are implicated in eminent domain proceedings. Having successfully defended their rights, Plaintiffs move for an award of reasonable attorneys' fees and costs. Plaintiffs' request is supported by

---

[1] The Court manages two related cases on this rail corridor, *Rickey A. Hyatt and Barbara Hyatt v. United States*, Case No. 23-499, and *Daniel Nicholson and Patricia Midgett v. United States*, Case No. 23-843. The parties filed joint briefing during summary judgment and similar briefing on this matter. This Opinion addresses both cases and will be filed on both dockets, the only difference will be the captions. To the extent the Court refers to a specific filing, it will denote that filing with the label *Hyatt* or *Nicholson*. This follows the Court's method in its Summary Judgment Opinions. (*See Hyatt* ECF No. 30; *Nicholson* ECF No. 25).

reliable evidence and applicable law, demonstrating that a fee award is warranted for the significant costs incurred in guarding their constitutional rights.

# I.    Background[2]

Plaintiffs are North Carolinian property owners subject to a rail easement owned by Norfolk Southern Railway Company ("Norfolk Southern"). *Hyatt*, 170 Fed. Cl. at 424–45; *Nicholson*, 170 Fed. Cl. at 405–406. To expand a vast inner-city trail network, Norfolk Southern sold its interest in a 3.1-mile rail corridor to the City of Greensboro, North Carolina. 170 Fed. Cl. at 422. The sale was contingent upon successfully railbanking the corridor via The National Trails System Act, 16 U.S.C. §§ 1241–51 ("The Trails Act"). *Id.* Based on the easement conversions on their respective properties, Plaintiffs initiated litigation in the spring of 2023. *Id.* (*see also Hyatt* Compl., ECF No. 1 (filed April 12, 2023); *Nicholson* Compl., ECF No. 1 (filed June 7, 2023)).

The following fifteen months of litigation were relatively nondescript. In short, the Court decided liability for Plaintiffs, resulting in a settlement agreement of $100,892, collectively. 170 Fed. Cl. 417; 170 Fed. Cl. 399; (*see Hyatt* Def.'s Resp. at 1, ECF No. 39; *Nicholson* Def.'s Resp. at 1, ECF No. 32 (collectively referred to as "Def.'s Resp."); *Hyatt* Pls.' Reply at 1, ECF No. 40; *Nicholson* Pls.' Reply at 1, ECF No. 33 (collectively referred to as "Pls.' Reply")).[3] However, the journey to settlement was not direct. Based on the nature of Plaintiffs' Motions, the Court reviews the timeline broadly.

After the United States responded to the Complaints, it moved to consolidate *Hyatt* and *Nicholson*. (*Hyatt* Mot. to Consol., ECF No. 6). Plaintiffs objected for their own case management purposes. (*Hyatt* Resp. to Mot. to Consol., ECF No. 7). The Joint Preliminary Status Report highlighted the possibility that discovery in other, tangentially related cases, where

---

[2] The Court issued a substantive Summary Judgment ruling on March 13, 2024. *Hyatt v. United States*, 170 Fed. Cl. 417 (2024); *Nicholson v. United States*, 170 Fed. Cl. 399 (2024). Insomuch as they are relevant here, the Court reiterates those findings. This section provides context for the following analysis by briefly reviewing the background and summarizing the key litigation events.

[3] Plaintiffs filed separate "Motions for Attorney Fees and Litigation Expenses Under the URA" in both *Hyatt* and *Nicholson*, including different figures but similar arguments. (*Hyatt* Pls.' Mot., ECF No. 38; *Nicholson* Pls.' Mot., ECF No. 31). Thus, the Court refers to those motions separately. Defendant's Response in opposition to the requested fees, (*Hyatt* Def.'s Resp., ECF No. 39; *Nicholson* Def.'s Resp., ECF No. 32), and Plaintiffs' Reply, (*Hyatt* Pls.' Reply, ECF No. 40; *Nicholson* Pls.' Reply, ECF No. 33), contain captions for both cases. The Court refers to those briefs collectively as "Def.'s Resp." and "Pls.' Reply."

discovery had already been conducted, may influence the discovery process in this matter.[4] (Joint Preliminary Status Report ("JPSR") at 2, ECF No. 10). This caused the parties some disagreement as to how to best proceed with discovery. (*Id.* at 4–6).

Plaintiffs proposed bifurcation into: (1) a title-determination and liability phase; and (2) a just compensation phase assuming Plaintiffs were successful during the initial phase. (JPSR at 2). At that point, Plaintiffs had already exchanged their RCFC 26 disclosures. (*Id.* at 3). The United States opposed bifurcation and proposed that the case proceed on an expedited schedule. (*Id.* at 5). Its justification was that Plaintiffs' counsel and the "United States ha[d] already been through discovery in the earlier filed cases *at least three times* (indeed, [P]laintiffs' counsel . . . conducted two trials in those earlier cases on the basis of that discovery), [thus] the parties need not engage in duplicative discovery efforts again in these matters." (*Id.* (emphasis in original)). Even so, the United States also averred its belief that "further exploration of the facts is necessary before they can determine the likelihood of settlement." (*Id.* at 9). In that report, the parties' proposed schedules varied based on their divergence of opinion on moving the case forward. (*Id.* at 11–12).

The Court scheduled an in-person hearing to address the parties' differing stances on the Motion to Consolidate, the issue of bifurcating trial, the potential for combined fact and expert discovery, the parties' proposed litigation timelines, and the litigation history of related cases. (*Hyatt* ECF No. 12; *see also* Sept. 5, 2023 Tr. 4:6–8 (Court establishing that this proceeding was to facilitate "discussion about where we're going to go in this case and how we're going to get there."), *Hyatt* ECF No. 15). That conference highlighted the parties' conflicting positions. Plaintiffs began by reiterating their objections to any form of consolidation. (Sept. 5, 2023 Tr. 12:14–25 (Pls.' Counsel: "The case of *Hyatt* and the case of *Nicholson* are not directly related cases. They're indirectly related cases, just as are all of these Greensboro litigation." "[The cases] involve separate Plaintiffs, separate properties, separate appraisal issues[,] [a]nd . . . consolidation is not efficient, and it actually wreaks many problems at the end of the case when you try and resolve singular cases, when you have multiple cases altogether.")).

During the conference, Plaintiffs went on to detail their progress toward discovery, including their Claims Book submission in July, but they indicated that the United States had not responded. (*Id.* at 4:14–18). The United States wished to dispense with the Claims Book process in its entirety; it averred that, "in light of the history in this case, there is no benefit to going through the claims book process again[,]" because within their initial disclosures "a *Hyatt* title analysis was disclosed, and in *Nicholson*, we anticipate a 26(e) disclosure with that information

---

[4] *Agapion, et al. v. United States*, Case No. 19-1596 (Fed. Cl.); *Chapman Spring/Garden, LLC, et al. v. United States*, Case No. 19-1942 (Fed. Cl.); *Black, et al. v. United States*, Case No. 22-10 (Fed. Cl.); *Mohorn, et al. v. United States*, Case No. 21-546 (Fed. Cl.); *Goodhue Partners, LLC, et al. v United States*, Case No. 21-87 (Fed. Cl.); *Helen C. Wood, LLC, et al. v. United States*, Case No. 21-2143 (Fed. Cl.); *Kotis Associates, LLC, et al. v. United States*, Case No. 20-932 (Fed. Cl.).

in the near future." (*Id.* at 5:8–16; *see also id.* at 5:22–25 (United States stating that this choice of procedure was an active area of disagreement between the parties)).

While declining formal consolidation, the Court established a synchronized schedule for the cases, allowing parties to file documents under both case names to streamline proceedings. (*Id.* at 47:24–48:3 (parties agreeing the Court's decision would apply equally to both cases); *see also Hyatt* ECF No. 13). The Court further directed the parties to immediately commence preparations for summary judgment briefing as to liability. (Sept. 5, 2023 Tr. 48:8–18).

The second key development was the parties' cross-motions for summary judgment in both cases. The United States moved for summary judgment, arguing that the lack of available compensation precludes a finding of a taking, and that the railroad's intent was key despite a trail agreement being reached. (Def.'s Mot. for Summ. J., ECF Nos. 18 (*Hyatt*), 13 (*Nicholson*)). Plaintiffs cross-moved for partial summary judgment contending that the United States' alteration of the easement on their property constituted a taking. (Pls.' Mot. for Part. Summ. J., ECF Nos. 19 (*Hyatt*), 14 (*Nicholson*)). The Court held that, as to liability:

> Plaintiffs have proven that they have an interest in the underlying property and that Norfolk Southern's easement is limited to rail use. By issuing a NITU and invoking Section 1274(d) of the Trails Act, the United States intervened and blocked Plaintiffs' interests. The subsequent trail-use agreement imposes further encumbrances on Plaintiffs' properties than before. Consequently, they have successfully shown that the United States, through these actions, has taken their property in accordance with the provisions of the Fifth Amendment. To establish liability, no more is required.

*Hyatt*, 170 Fed. Cl. at 430; *see also Nicholson*, 170 Fed. Cl. at 412. The Court declined to make legal conclusions as to damage calculations, finding that they would be inappropriate at the liability stage. *Hyatt*, 170 Fed. Cl. at 421; *see also Nicholson*, 170 Fed. Cl. at 403.

In that decision, the Court directed the parties to confer on valuation discovery and pre-trial proceedings by March 28, 2024. *Hyatt*, 170 Fed. Cl. at 434; *see also Nicholson*, 170 Fed. Cl. at 417. The parties sought additional time to explore settlement, citing their May 2023 offer and the Court's March 13, 2024 Opinion. (*Hyatt* ECF No. 31). The Court granted their request. The parties subsequently reported a tentative settlement for just compensation and interest, pending approval, and sought time to negotiate URA fees. (*Hyatt* ECF No. 32). The Court also granted the request, ordering thirty-day updates beginning on May 28, 2024. A third report indicated that the United States was reviewing the compensation/interest settlement and ongoing URA fee negotiations. (*Hyatt* ECF No. 33). The fourth report noted that Plaintiffs had submitted additional billing records. (*Hyatt* ECF No. 34), Ultimately, the *Hyatt* and *Nicholson* Plaintiffs collectively settled their claims for $100,892. (Def.'s Resp. at 1; Pls.' Reply at 1). Although the parties were able to resolve the measure of just compensation, they could not settle Plaintiffs' demand for URA fees and expenses. Thus, Plaintiffs now seek an award of attorneys' fees and expenses. (*Hyatt* Pls.' Mot., ECF No. 38; *Nicholson* Pls.' Mot., ECF No. 31).

## II.    Analysis

The *Hyatt* Plaintiffs request the following reimbursement schedule for fees and expenses:

|  | Hours | Attorneys' Fees | Expenses | Total |
|---|---|---|---|---|
| Lewis Rice | 263.4 | $129,861.50 | $2,392.04 | $132,253.54 |
| Tuggle Duggins | 23.7 | $8,697.00 | $0.00 | $8,697.00 |
| Total | 287.1 | $138,558.50 | $2,392.04 | $140,950.54 |

(*Hyatt* Pls.' Mot. at 5). The *Nicholson* Plaintiffs request:

|  | Hours | Attorneys' Fees | Expenses | Total |
|---|---|---|---|---|
| Lewis Rice | 213.4 | $103,668.00 | $1,832.88 | $105,500.88 |

(*Nicholson* Pls.' Mot. at 2). Combined, the request for all Plaintiffs is:

|  | Hours | Attorneys' Fees | Expenses | Total |
|---|---|---|---|---|
| Lewis Rice | 476.8 | $233,529.50 | $4,224.92 | $237,757.42 |
| Tuggle Duggins | 23.7 | $8,697.00 | $0.00 | $8,697.00 |
| Total | 500.5 | $242,226.50 | $4,224.92 | $246,451.42 |

(Pls.' Reply at 2).

The United States strenuously objects to Plaintiffs' requests, coloring them as "unreasonable" given that "Plaintiffs were represented by at least eight attorneys, including five partner-level attorneys in these two simple tagalong Trails Act takings cases that obtained only $100,892 in just compensation for Plaintiffs, less than half the amount now sought by their attorneys[.]" (Def.'s Resp. at 1). The United States claims that Plaintiffs' counsel "already had (1) conducted discovery and obtained all necessary documents to litigate claims related to the rail corridor at issue, (2) briefed the same issues presented to this Court at summary judgment, and (3) conducted two trials regarding Trails Act takings claims from the same corridor and trail conversion." (*Id*. at 2). Thus, the United States advocates for an award of $33,630.67, (*id*.), $33,964.00, (*id*. at 19), or $50,549.50, (*id*.), for attorneys' fees attributable to Lewis Rice and no reimbursement for any of Tuggle Duggins's reasonable attorneys' fees, (*id*.).

The United States inexplicably fails to acknowledge its divergent litigation positions in this case as opposed to previously related matters. Moreover, the United States overlooks the

dynamic and ever-evolving nature of rails-to-trails case law, which mandates independent legal analysis for each action, even those that may superficially resemble prior cases. And somewhat troublingly, the United States wholly ignores a key provision of the engagement agreement between Plaintiffs and their counsel. Given the complete circumstances in play, the United States has failed to provide sufficient justification for deviating from the lodestar method advocated far by Plaintiffs. Upon consideration, the Court finds Plaintiffs' request for attorney's fees reasonable.

    *A.*      *URA Fees Generally*

Congress permits the recovery of attorney's fees in certain categories of cases. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561–62 (1986), *supplemented*, 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987).[5] The fee-shifting provisions of the URA are one such example, requiring the Government to assume the litigation expenses of counsel upon a successful takings claim. *See* 42 U.S.C. § 4654. Specifically, in actions brought under the Tucker Act or the Little Tucker Act in which a plaintiff is compensated for the taking of property, the URA provides for the recovery of "such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney . . . fees, actually incurred because of such proceeding." § 4654(c).

The Supreme Court has advised that all federal fee-shifting statutes calling for an award of "reasonable" attorneys' fee should be construed "uniformly." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2 (1989) ("We have stated in the past that fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." (quoting *Northcross v. Memphis Bd. of Educ.*, 412 U.S. 427, 428 (1973)); *Hubbard v. United States*, 480 F.3d 1327, 1333 (Fed. Cir. 2007). Nothing in the language or legislative history of the URA suggests that it should receive a different construction than other fee-shifting statutes. *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012).

Construing the URA uniformly, the award of "reasonable" attorneys' fees is appropriate in two separate circumstances. First, when the government initiates a condemnation proceeding that ultimately fails, either due to an adverse final judgment or the government's abandonment of the action, attorneys' fees may be awarded. 42 U.S.C. § 4654(a). Those cases are litigated in district courts and appealed to the regional circuits. *See, e.g.*, *United States v. 122.00 Acres of Land*, 856 F.2d 56, 58–59 (8th Cir.1988) (reviewing a district court's award of fees pursuant to section 4654(a)). Second, and important to this case, an award of attorneys' fees may also be appropriate in cases where a property owner files an inverse condemnation action under the

---

[5] As it applies generally to attorneys' fees, our system adheres to the "American Rule" under which "each party in a lawsuit ordinarily shall bear its own attorney's fees." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

Tucker Act or Little Tucker Act, asserting a Fifth Amendment taking by the government, and subsequently receives compensation for such taking. § 4654(c).

"[T]he primary purpose" of the URA is to "render[ ] property owners whole." *Haggart v. Woodley*, 809 F.3d 1336, 1359 (Fed. Cir. 2016). The URA thus requires "the Government to assume the litigation expenses of counsel" upon a successful takings claim. *Id.* at 1357. The Federal Circuit has stated that "[t]he fee-shifting provisions of the . . . URA . . . allow for recovery of attorneys' fees adequate to permit people with small takings claims to vindicate their rights with the assistance of competent counsel." *Bywaters v. United States*, 684 F.3d 1295, 1296 (Fed. Cir. 2012). The URA also allows for reimbursement of costs. 42 U.S.C. § 4654(c).

The Supreme Court has consistently recognized the lodestar method as the "guiding light" of its fee-shifting jurisprudence. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Dague*, 505 U.S. at 562). The lodestar method is "the product of reasonable hours times a reasonable rate." *Dague*, 505 U.S. at 559–60. That calculation does not end the inquiry. The Federal Circuit has directed this Court to consider two elements in calculating URA fees. First, the Court should consider the "amount involved and results obtained" as well as the administrative nature of the work and the fee agreement in determining the lodestar figure. *Bywaters*, 670 F.3d at 1228. Second, the Court must apply "the forum rule" in determining the reasonable hourly rate for the relevant market. *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348 (Fed. Cir. 2008).

Although there is a "strong presumption" that the lodestar figure represents a "reasonable" attorney fee, *Dague*, 505 U.S. at 565, the Supreme Court has also acknowledged that courts have the discretion adjust the lodestar figure upward or downward when other relevant factors are taken into account. *Del. Valley*, 478 U.S. at 564 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–435 (1983)); *see also* 42 U.S.C. § 4654(c) (providing for an award of attorney fees that will "in the opinion of the court" reimburse plaintiffs for reasonable expenses actually incurred). Adjusting up or down requires a coherent, specific explanation; a Court must justify its deviation with "specific evidence" demonstrating that the factors considered are not adequately subsumed within the lodestar calculation. *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984); *see also Perdue*, 559 U.S. at 558 ("It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement."); *Del. Valley*, 478 U.S. at 565 (noting that modifications of the lodestar figure should be supported by "detailed findings" by the lower court). Adjustments to the lodestar figure are only justified when a relevant consideration has not been factored into the initial calculation. *Bywaters*, 670 F.3d at 1229. Fee applicants bear "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

"[T]he significance of the overall" degree of success obtained by plaintiffs is "the most critical factor" in determining reasonable attorney's fees. *Arnold v. United States*, 163 Fed. Cl. 13, 39 (2022) (citing *Hensley*, 461 U.S. at 435–36). That said, large URA fees can be granted even if the underlying award is relatively small. *See Bywaters*, 670 F.3d at 1230–31 ("The mere fact that the recovery is small in amount is not a circumstance justifying a reduced fee award." (citing *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 168 (2d Cir. 2011)). Essentially, fee shifting statutes like the URA are intended to promote litigation of meritorious claims which would otherwise be abandoned arising from the sometimes insurmountable hurdle of hiring

competent counsel. *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). As couched by the Seventh Circuit, such statutes discourage "petty tyranny." *Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992). Here, though the amount of recovery may be modest, the interest involved is one of constitutional magnitude.

      **B.**    *Small recovery does not warrant a reduction in fees and contingency fee agreements do not cap statutory awards.*

For the United States' initial argument, it states that URA fee should be limited by the terms of Lewis Rice's engagement letter. (Def.'s Resp. at 5). Specifically, it argues that because the URA only provides for reimbursement of "reasonable" fees and costs that were "actually incurred," and "no reasonable client . . . would seek to pay 250% of their own recovery to their attorneys," that "Plaintiffs' counsel is not free to obligate the United States to pay a greater amount than its clients[.]" (*Id.* at 5–6). Thus, the United States maintains that "one third of the just compensation award, plus costs, is the proper award here," equating to $33,630.67. (*Id.* at 6). These arguments have been rejected by many other judges of this Court except in limited situations. The United States points to no anomalous circumstances which would justify deviation here.

As an initial point, while a plaintiff's level of compensation may be a consideration in the award of attorneys' fees, it cannot be the sole reason to decrease a fee award. As a judge of the Federal Circuit recently stated during oral argument regarding URA fees, there is a problem with the "general idea that a small recovery, even if it's a complete success, cannot support a very large fee[;] . . . the fact that it takes a tremendous amount of legal work to arrive at [a complete success] is not a ground to reduce the fee if all of it was justified to win that small amount." *Arnold v. United States*, CAFC No. 23-1951, Nov. 5, 2024 Oral Arg 18:03–24:40 (citing *Bywaters*, 670 F.3d at 1230–31), https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1951_11052024.mp3; *see also Hippely v. United States*, 173 Fed. Cl. 389, 430 (2024) ("While the government challenges this ratio as unreasonable and disproportionate, reducing a requested fee reimbursement 'where a plaintiff has obtained excellent results' is inappropriate." (citing *Hensley*, 461 U.S. at 435)). This is because the purpose of URA fees is not solely to compensate for the monetary value of the property taken, but also to recognize the significant legal hurdles property owners may face when challenging government takings. These challenges often involve complex legal arguments, extensive research, and the need to overcome the government's significant resources. Moreover, the deprivation of property rights by the government against the will of the owner is not a little thing. Even in cases where the final award is modest, the legal effort required to secure that award can be substantial, justifying the recovery of higher fees. Accordingly, the Court will not diminish an attorney fee award solely on the United States' assessment of its proportionality to the recovery.

As to the United States' argument relating to the contingency fee agreement, the Court iterates Judge Sweeney's rationale for rejecting this argument in *Bradley v. United States*:

      By focusing narrowly on the phrase "actually incurred," [the United States] disregards another "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." The URA requires the court to "determine

and award" an amount that "will in the opinion of the court . . . reimburse [the] plaintiff for his . . . reasonable attorney . . . fees[ ] actually incurred because of such proceeding." 42 U.S.C. § 4654(c). In other words, it is the [C]ourt's role to determine what it believes, in its "considerable discretion," is the amount that will reimburse a plaintiff for attorneys' fees actually incurred. While a fee agreement may provide evidence of the fees actually incurred by a plaintiff, the [C]ourt is not bound or constrained by the fee agreement's provisions. Indeed, if the court adopted [the United States'] construction of § 4654(c), such that it would be required to award a plaintiff an amount specified in a fee agreement, the [C]ourt would be deprived of the discretion granted by the statute, rendering the phrase "will in the opinion of the court" meaningless—violating the very canon of statutory construction touted by [the United States].

164 Fed. Cl. 236, 247–48 (2023) (citing *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (following "the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context"); *Bywaters*, 670 F.3d at 1228). Moreover, the Court recently rejected this argument in *Arnold*, which the United States cites as support throughout its opposition. In *Arnold*, Judge Bonilla stated that "the law is clear that where the contingent-fee arrangement does not cap attorney's fees at a percentage of the damages award, it cannot be used as the sole (or even primary) factor to limit the recovery of attorney's fees." *Arnold v. United States*, 163 Fed. Cl. 13, 23 (2022) (citing *Bywaters*, 670 F.3d at 1232).

Plaintiffs' counsel engaged with the *Hyatt* and *Nicholson* Plaintiffs on February 2, and May 7, 2023, respectively. The engagement letters include the following provision:

2.   Fees and Expenses.

The Firms have agreed to represent you, and the other property owners who may join this action, on a contingency fee basis. This means that if we are not successful in obtaining a judgment, award, or settlement from the government there will be no cost to you for the Firms' professional services. If we are successful, we will receive a fee that is the greater of either:

(a)   one-third of the "Total Award" received by all property owners (or forty-percent in the case of an appeal); or

(b)   the statutory attorney fee determined by the Court.

The "Total Award" includes the damage award for the value of the property taken, all interest awarded upon this amount, and the award of a statutory attorney fee (less any unreimbursed expenses) or the gross amount of any settlement reached between you and the government.

(Def.'s Resp. Ex. A (Hyatt Engagement Letter), Ex. B (Nicholson, Midgett Engagement Letter)). Notably, the letters indicate that counsel will be entitled to one-third of the total award *or* statutory attorney fees. The government's omission of the latter provision is concerning.

The United States largely hangs its hat on the Court's recent decision in *Banks*. (Def.'s Resp. at 5–9 (citing *Banks v. United States*, 171 Fed. Cl. 142, 151 (2024)). In that case, Judge Somers analyzed engagement letters, finding that counsel's agreement in *Banks* lacked language

that would provide the greater of a percentage of the plaintiffs' recovery or a lodestar calculation. 171 Fed. Cl. at 160. This, Judge Somers noted, was in direct contrast to cases like *Arnold* that concluded that the contingency agreements did not limit fees to one-third of just compensation awarded. *Banks*, 171 Fed. Cl. at 160 (citing *Arnold*, 163 Fed. Cl. at 23). This case is distinguishable. In *Banks*, the plaintiffs agreed to a contingency fee of 40% of any recovery, without any mention of statutory fees or a requirement to pay the higher of the two. This distinction makes a difference; *Banks* is not persuasive in this instance.

In takings cases where a contingency fee agreement exists, the "one-third" contingency award should serve as a baseline for determining reasonable attorney's fees rather than a cap. Legislative treatment of takings cases frequently deviates from general practice, reflecting a societal understanding that the United States should bear a greater share of the burden in these matters. For example, in cases involving court-appointed experts, the parties typically bear the financial responsibility, with takings cases constituting a notable exception. *See* FED. R. EVID. 706(c)(1) (treating just compensation cases as analogous to criminal cases). This divergence likely stems from the recognition that constitutional rights possess an inherent value that transcends mere monetary considerations. This precedent provides a compelling public policy argument for granting the Court discretion in setting reasonable fee ceilings. Consequently, the Court rejects the United States' contention that a contingency fee should dictate the actual fees recoverable under the URA. The Court concludes that the lodestar method is the correct method of calculation.

### C.    *Reasonable Hours Expended*

A fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "[I]n determining the amount of reasonable attorneys' fees to award under federal fee-shifting statutes, th[is] . . . court is afforded considerable discretion." *Bywaters*, 670 F.3d at 1228 (citations omitted). "[I]n determining the reasonable number of hours expended and the reasonable hourly rate, [Courts] should consider the 'amount involved' in the case as well as other factors bearing on reasonableness, such as the fact that litigation of these types of disputes serves a greater purpose (vindicating constitutionally protected property rights)." *Bywaters*, 684 F.3d at 1295–96. A mere mathematical approach, like that urged by the United States, is improper. *Hensley*, 461 U.S. at 435 n.11 ("Rations of recovery versus attorney fees sought provides little aid in determining what is a reasonable fee in light of all the relevant factors." (quotations omitted)).

This Court must also consider "the degree of success obtained." *Hensley*, 461 U.S. at 436. In *Hensley*, the Supreme Court held: "court[s] . . . should exclude . . . hours that were not 'reasonably expended.' . . . Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. While the participation "of more than one attorney does not necessarily amount to unnecessary duplication of effort[,]" "[i]f a task can easily be performed by a higher paid and a lower paid employee, the court thinks it unreasonable to choose the former." *Hippely*, 173 Fed. Cl. at 420 (2024) (citing *Hopi Tribe v. United States*, 55 Fed. Cl. 81, 99 (2002) and *Hardy v. United States*, 157 Fed. Cl. 464, 470, 482 (2021)).

1.    **Lewis Rice**

Lewis Rice billed the following in *Hyatt:*

| Timekeeper | Title | Total Hours | Total Billed |
|---|---|---|---|
| Lindsay S.C. Brinton | Member[4] | 42.9 | $ 30,187.50 |
| Meghan S. Largent | Member | 24.5 | $ 17,177.50 |
| Michael Armstrong | Member | 80.4 | $ 42,665.00 |
| T. Hunter Brown | Associate | 15.2 | $ 7,104.50 |
| Lucas D. Jackson | Associate | 54.4 | $ 23,396.00 |
| Meredith Shrinivas | Paralegal | 28.1 | $ 6,193.00 |
| Kathleen E. Mills | Paralegal | 0.1 | $ 22.50 |
| Courtney Ham | Paralegal | 2.4 | $ 528.00 |
| Daniel Frew | Paralegal | 1.8 | $ 225.00 |
| Aleanah Arraya | Paralegal | 0.8 | $ 137.50 |
| Zariah D. Jones | Paralegal | 12.8 | $ 1,685.00 |
| **Totals:** | | **263.4** | **$ 129,861.50** |

(*Hyatt* Pls.' Mot. at 16).[6] Similarly, Lewis Rice billed the following in *Nicholson:*

| Timekeeper | Title | Total Hours | Total Billed |
|---|---|---|---|
| Lindsay S.C. Brinton | Member[4] | 30.5 | $ 21,551.50 |
| Meghan S. Largent | Member | 23.4 | $ 16,416.00 |
| Michael Armstrong | Member | 78.2 | $ 41,480.00 |
| Lucas D. Jackson | Associate | 34.6 | $ 15,224.00 |
| Meredith Shrinivas | Paralegal | 26.3 | $ 5,823.50 |
| Kathleen E. Mills | Paralegal | 0.1 | $ 22.50 |
| Courtney Ham | Paralegal | 2.4 | $ 528.00 |
| Amanda Welker | Paralegal | 0.1 | $ 15.00 |
| Daniel Frew | Paralegal | 4.2 | $ 525.00 |
| Aleanah Arraya | Paralegal | 2.5 | $ 600.00 |
| Zariah D. Jones | Paralegal | 11.1 | $ 1,482.50 |
| **Totals:** | | **213.4** | **$ 103,668.00** |

(*Nicholson* Pls.' Mot. at 12). Of the 476.8 total hours billed between the cases, somewhere between 251.9 hours and 312.8 hours (approximately 53–65%) are attributed to summary judgment briefing as to liability. (*Hyatt* Pls.' Mot. at 17; *Nicholson* Pls.' Mot. at 13 (stating 312.8 hours collectively); Def.'s Resp. at 13 (stating 251.9 hours); Def.'s Resp. Ex. D (equaling 252.3

---

[6] The footnotes in each figure state that "[a]s Lewis Rice is an LLC, its partner-level attorneys are designated as members." (*Hyatt* Pls.' Mot. at 16 n.1; *Nicholson* Pls.' Mot. at 12 n.1).

hours)).[7] In support of Plaintiffs' Motions, they attach exhibits showing the breakdown of time spent on the cases. (*Hyatt* Pls.' Mot. Ex. A at 2–9 (pages 4–6 specific to summary judgment briefing); *Nicholson* Pls.' Mot. Ex. A at 2–8 (pages 4–6 specific to summary judgment briefing)).

The United States believes that these hours are inflated. First, it argues that Plaintiffs' counsel had hiked this trail before as to summary judgment briefing in the various cases located on this rail line. (Def.'s Resp. at 13–14 (citing *Wood v. United States*, 21-2143; *Kotis v. United States*, 20-932)). This argument is not compelling as it ignores three significant details: (1) that the landscape of rails-to-trials litigation in this Court changes frequently; (2) that these cases were before different judges which may necessitate a different litigation strategy depending on prior rulings; and (3) that the summary judgment briefing in this case was specific to *Hyatt* and *Nicholson* Plaintiffs' properties. The Court acknowledges that similar legal and factual issues may have arisen in other cases, including those involving similar counsel. However, issues before a court are often not novel. The mere possibility of such overlap does not conclusively establish that the hours expended in this matter were inflated.

As to the general argument that Plaintiffs' "counsels' claimed hours for summary judgment briefing are so excessive as to not be credible and, thus, not recoverable," (Def.'s Resp. at 12), the United States recommends a 100% reduction of the requested summary judgment fees or, alternatively, 80%, (*id*. at 14–15). This Court is not persuaded by the United States' objections for three reasons: (1) Plaintiffs succeeded on its motions; (2) while parties are free to choose their own style of litigation, the United States had the option to settle liability; and (3) the United States could have put off summary judgment briefing until after expert discovery was completed which would perhaps render a more complete ruling. (*See* Sept. 5, 2023 Tr. 7:9–12 (the Court suggesting that the parties complete fact and expert discovery before summary judgment briefing)). As Plaintiffs state in their Reply, "the government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (Pls.' Reply at 12 (quoting *City of Riverside*, 477 U.S. at 580, n.11)). The Court agrees. While it may be more convenient for the government to dictate what opposing counsel should do in response to the government's litigation tactics, that is neither the law, nor prudent.

The United States also objects to the amount of "partner-level time" billed in excess of "$700 an hour" attributed to summary judgment briefing. (Def.'s Resp. at 14). Plaintiffs rebut this argument showing that the majority of the work was completed by a single partner and a single associate at less than the stated rate:

---

[7] The discrepancy between the parties' calculations attributed to hours spent on Summary Judgment briefing is unexplained. (*See* Pls.' Reply at 12–13 n.9). The discrepancy does not affect the analysis here, as the parties agree that more than half of billable hours were spent on liability briefing.

| Time Keeper | Position | Year | Hours Billed | Requested Rate | Fees at Requested Rate |
|---|---|---|---|---|---|
| Lindsay S.C. Brinton | Member | 2023 | 17.6 | $695.00 | $12,232.00 |
| Meghan S. Largent | Member | 2023 | 16.2 | $695.00 | $11,259.00 |
|  |  | 2024 | 1.3 | $725.00 | $942.50 |
| Michael Armstrong | Member | 2023 | 115.8 | $525.00 | $60,795.00 |
| **Total Member** |  |  | **150.9** |  | **$85,228.50** |
| Lucas D. Jackson | Associate | 2023 | 78.8 | $440.00 | $34,672.00 |
| T. Hunter Brown | Associate | 2023 | 10.7 | $460.00 | 4,922.00 |
| Meredith Shrinivas | Paralegal | 2023 | 10.5 | $220.00 | 2310.00 |
| Courtney Ham | Paralegal | 2023 | 1.4 | $220.00 | 308.00 |
| **Total** |  |  | **252.3** |  | **$127,440.50** |

(Pls.' Reply at 14). A little over one hour of time was billed at the objected-to-rate, (*Hyatt* Pls.' Mot. Ex. A at 7), making the United States' argument non-credible.

Further, it is difficult for this Court to swallow the argument that these hours must be inflated solely because "Plaintiffs' counsel claim that the summary judgment briefing in these cases required 152.5 hours of partner-level time," (Def.'s Resp. at 14), when that work led to a successful result. This goes to the degree of success obtained by Plaintiffs. In *Hensley*, the Supreme Court explained:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." [] First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? . . . Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee[.] Again, the most critical factor is the degree of success obtained . . . .

461 U.S. at 434–40. Here, Plaintiffs obtained total success. Because it took multiple attorneys to reach that level of success cannot, standing alone, be a reason to reduce fees. Accordingly, the Court rejects the United States' contention that attorney fees should be reduced based solely on the work necessitated by its specific litigation position regarding liability briefing.

Next, the United States argues that "[o]verstaffing led to duplicative work and needless meetings and memoranda," making those requested fees non-recoverable. (Def.'s Resp. at 15–18). The United States believes this is significant "because Plaintiffs seek reimbursement for 104 hours of time spent, at least in part, corresponding with co-counsel, which amounts to a demand for $63,395.50 at Plaintiffs' requested rates." (*Id.* at 17 (citing *Herring Networks, Inc. v. Maddow*, 2021 WL 409724, at *9 (S.D. Cal., 2021) ("A reduction of fees is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.")). However, the United States does not

point to case law citing that intra-office communication is per se unreasonable. The Court is similarly unaware of any precedent to this effect.

Courts may reduce the number of hours attorneys in a firm bill for communication with co-counsel only if, based on the facts of a particular case, the court finds that the hours billed are unreasonable. *Daggett v. Kimmelmann*, 811 F.2d 793, 797 (3d Cir. 1987) (finding that excessive communication among Plaintiffs' attorneys was one factor which justified the District Court's decision to reduce the number of hours that each attorney billed by ten percent); *Austin v. Sec'y of Health & Human Servs.*, No. 10-36V, 2013 WL 659574, at *14 (Fed. Cl. Jan 31, 2013) (Special Master deducted fees for excessive intra-office communication in a case where seven attorneys at one firm billed for attending conferences and drafting memoranda about the case). However, the United States has not shown that the hours billed based on that communication were unreasonable. An examination of the Plaintiffs' exhibits, (*Hyatt* Pls.' Mot Ex. A; *Nicholson* Pls.' Mot. Ex. A), suggests that inter-office correspondence was billed by only one party at a time. This observation indicates a potential attempt to avoid double-billing for internal communications within a legal team. Further, a per se rule against billing for inter-office communication would penalize good legal work. Penalizing counsel for zealous advocacy undermines the fundamental principles of equal access to justice and would have the effect of restricting a plaintiff's ability to retain qualified legal counsel. *See Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir. 1998) ("Careful preparation often requires collaboration and rehearsal . . . ."). Consequently, the Court finds that a reduction of fees based on communication with co-counsel is unwarranted.[8]

After careful consideration of the time records and arguments presented by Plaintiffs, the Court finds that the time spent on these matters was reasonable and necessary under the circumstances of these cases. Accordingly, the Court will not reduce the number of hours claimed by Lewis Rice.

### 2.    Tuggle Duggins[9]

Given the intricacies of property law, utilizing local counsel is frequently essential for successful litigation of land disputes. The United States makes the general argument that the local Greensboro-based firm, Tuggle Duggins, assisting with the Hyatt litigation is not entitled to recover fees at all. (Def.'s Resp. at 18). The United States makes this argument based on the notion that "Plaintiffs make no attempt to explain why a second firm was required to assist in the Hyatt litigation[,]" and it believes that "Tuggle Duggins work was entirely duplicative or

_____

[8] As stated above, the Court typically declines to award plaintiffs all requested URA fees in instances of overstaffing by partners where the "task[s] [could be] easily be performed by . . . a lower paid employee." *Hopi Tribe v. United States*, 55 Fed. Cl. 81, 99 (2002); *see also Hensley*, 461 U.S. at 434. The United States does not specifically address what tasks could be have been performed by lower paid employees, thus the Court declines to address it.

[9] Tuggle Duggins was employed to assist with *Hyatt* litigation only. (*Hyatt* Pls.' Mot. at 6; Pls.' Reply at 1 n.1).

premature and is thus not recoverable." (*Id.*). The practice of employing local firms is not uncommon nor deemed unreasonable per se. Thus, the Court will analyze Tuggle Duggins's submitted hours for reasonableness.

Tuggle Duggins provides a time sheet indicating date, timekeeper, time worked, a description of the work done, along with the applicable rate for each timekeeper, and the total fees related to that work. (*Hyatt* Pls.' Mot. Ex. H). The requested hours to be reimbursed are:

| Timekeeper | Title | Total Hours | Total Billed |
|---|---|---|---|
| J. Nathan Duggins | Director | 0.8 | $    416.00 |
| Jason B. Sparrow | Director | 11.0 | $  4,357.00 |
| Andrew B. Bowman | Of Counsel | 7.6 | $  2,770.00 |
| Shawn V. Poole | Associate | 4.3 | $  1,154.00 |
| **Totals:** | | **23.7** | **$  8,697.00** |

(*Hyatt* Pls.' Mot. at 25). The United States claims that "even a superficial examination of the fees" reveals that "all of that" time was for work done "(1) prior to the filing of the [C]omplaint, such that it amounted to new client solicitation, (2) duplicative of other work done by other attorneys on this case, or (3) was correspondence with co-counsel related to this case, it is not reimbursable." (Def.'s Resp. at 18). As discussed above, with no other objections, the Court cannot find that correspondence with co-counsel is unreasonable. Further, the United States points to no specific time entry which would be duplicative of other work done by the Lewis Rice attorneys. Thus, the Court will only analyze whether the work done prior to filing the Complaint was reasonably billed.

In *Otay Mesa*, Judge Wheeler explained, "expenses associated with filing a Fifth Amendment takings claim are reimbursable; expenses incurred prior and not directly related to the filing itself are not." *Otay Mesa Prop., L.P. v. United States*, 124 Fed. Cl. 141, 147 (2015). The Federal Circuit has instructed that, "[w]hile pre-litigation expenses are precluded from reimbursement under 42 U.S.C. § 4654(c) . . . , 'the significant effort expended' in 'the filing of the petition' may be compensable under the statute if proper documentation [is] provided." *Yancey v. United States*, 915 F.2d 1534, 1543 (Fed. Cir. 1990) (internal citations omitted); *see also Preseault v. United States*, 52 Fed. Cl. 667, 671 (2002) ("Section 4654(c) does not provide for the reimbursement of expenses incurred by plaintiffs before their decision to file suit in the Court of Federal Claims."). Judges of this court have held similarly. *See e.g., Bradley*, 164 Fed. Cl. at 250 (explaining that work performed "in preparation for filing a complaint" necessarily occurs before initiating suit and is generally not reimbursable, but "it may nevertheless qualify as work performed 'because of' the suit" if, for example, it is (1) "the prelitigation costs of 'work investigating plaintiffs' claims [and] establishing the facts necessary to file a case on behalf of a class"; (2) "prepar[ation of] the complaint"; or (3) "'significant effort expended' in 'the filing of the petition' . . . if proper documentation [is] provided.")); *Hippely*, 173 Fed. Cl. at 410 (excluding fees from before client engagement letter was signed).

Based on this survey of cases, Plaintiffs' Reply correctly indicates there are two "time entries which were inadvertently included in this matter, and which are not compensable," which are "entries by Mr. Sparrow on January 5 and 8, 2024, totaling 1.2 hours and $486.00[.]" (Pls.'

Reply at 19). The Court will deduct those funds in its final award. Excluding those entries, Tuggle Duggins's first entry begins after the Hyatts' new client letter was issued. (*See Hyatt* Pls.' Mot. Ex. H, line 3). The Court finds that Tuggle Duggins has provided sufficient evidence to support the reasonableness and necessity of the hours submitted for reimbursement, as required by the URA.

        D.     *Reasonable Hourly Rate*

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with" the prevailing market rate in the relevant community. *Blum*, 465 U.S. at 896; *Avera*, 515 F.3d at 1348–49. The "prevailing market rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 896 n.11.

The United States Court of Federal Claims is in Washington, D.C.; however, "that this Court sits in Washington, D.C. and has nationwide jurisdiction does not dictate that [those] rates apply in every case." *Arnold*, 163 Fed. Cl. at 24. That is, in a case "where the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a very significant difference in compensation," the Court should determine reasonable attorney rates based on the prevailing market rates in the community where most of the legal work was performed—this is referred to as the Davis County exception. *Avera,* 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755 (D.C. Cir. 1999)). The purpose of the Davis County exception is "to preclude counsel from receiving a windfall by securing compensation at a forum rate that is significantly higher than the reasonable rate counsel could command in the local market where he or she practices law and was retained." *Bratcher v. United States*, 136 Fed. Cl. 786, 799 (2018)

      **1.**     **Lewis Rice**

As it applies to Lewis Rice, Plaintiffs do not assert or dispute that the bulk of work was performed in St. Louis, Missouri. Instead, they assert that the Davis County exception does not apply when, "there is not a 'very significant difference' between the 'forum' rate and the rate found in the relevant community," which Plaintiffs believe to be the case here. (*Hyatt* Pls.' Mot. at 14–15 (citing *McCarty v. United States*, 142 Fed. Cl. 616, 621–22 (2019); *Campbell v. United States*, 138 Fed. Cl. 65, 75–76 (2018)); *Nicholson* Pls.' Mot. at 14–15 (citing same)).[10] The United States argues that the Court should apply the Davis County exception because: "(1) Plaintiffs' counsel was based in St. Louis from the case's inception through the beginning of 2019 [sic];"[11] (2) "the bulk of the work was performed in St. Louis;" and (3) "the attorney rates

---

[10] The Court has rejected this argument before. *See Bradley v. United States*, 164 Fed. Cl. 236, 252 n.11 (2023) ("Plaintiffs contend that '[i]n other cases, the Court . . . has found that there is not a 'very significant difference' between the 'forum' rate and the rate found in the relevant community, and has awarded a firm's usual and customary fees.' . . . Their characterization of the awards in these cases is erroneous.") (internal citations omitted).

[11] The Court assumes that "2019" is a scriveners' error as Plaintiffs initiated these cases in 2023.

in the St. Louis market are significantly lower than the rates Plaintiffs' counsel seek to recover here." (Def.'s Resp. at 11).

Beyond the two cases cited by Plaintiffs, there is insufficient evidence to establish that prevailing attorney's fees in St. Louis are essentially equivalent to those in Washington, D.C. This ignores many other cases applying the Davis County exception in rails-to-trails cases with St. Louis firms. *See e.g.*, *Bradley*, 164 Fed. Cl. at 252; *Arnold*, 163 Fed. Cl. at 25; *Bratcher*, 136 Fed. Cl. at 799. Further, the Court considers that some sources indicate that the cost of living is approximately 37% lower in St. Louis than it is in Washington, D.C. *See* Bankrate, *Cost Of Living Comparison Calculator*, https://www.bankrate.com/real-estate/cost-of-living-calculator, (last visited Dec. 24, 2024). The Court will accordingly "calculate [Plaintiffs' proper payment] according to [the] prevailing market rates in [the] relevant community" based on Missouri. *See* *Hippely*, 173 Fed. Cl. at 432; *Blum*, 465 U.S. at 895.

This litigation spanned from 2023 to 2024. For those years, Lewis Rice billed at the following rates:

| Timekeeper | 2023 | 2024 |
|---|---|---|
| Lindsay S.C. Brinton | $ 695.00 | $ 725.00 |
| Meghan S. Largent | $ 695.00 | $ 725.00 |
| Michael Armstrong | $ 525.00 | $ 550.00 |
| T. Hunter Brown | $ 460.00 | $ 485.00 |
| Lucas D. Jackson | $ 440.00 | |
| Meredith Shrinivas | $ 220.00 | $ 225.00 |
| Kathleen E. Mills | | $ 225.00 |
| Courtney Ham | $ 220.00 | |
| Daniel Frew | $ 125.00 | |
| Aleanah Araya | $ 125.00 | $ 250.00 |
| Zariah D. Jones | $ 125.00 | $ 175.00 |

(*Hyatt* Pls.' Mot. at 18; *Nicholson* Pls.' Mot. at 14).[12] In support of their fee request, Plaintiffs attach declarations from Ms. Lindsay S.C. Brinton, lead counsel, (*Hyatt* Pls.' Mot. Ex. B; *Nicholson* Pls.' Mot. Ex. B), Mr. Richard Walsh, a managing partner of Lewis Rice, (*Hyatt* Pls.' Mot. Ex. C; *Nicholson* Pls.' Mot. Ex. C), and Ms. Emily Cantwell, a partner at a separate St. Louis law firm swearing to her own independent knowledge of the prevailing hourly rates in St. Louis, (*Hyatt* Pls.' Mot. Ex. D; *Nicholson* Pls.' Mot. Ex. D).

---

[12] Pursuant to the affidavit from Mr. Richard Walsh, managing partner at Lewis Rice, Lindsay S.C. Brinton has been practicing law for 17 years, Meghan S. Largent has been practicing law for 18 years; Michael Armstrong has been practicing law for 10 years; T. Hunter Brown has been practicing law for 7 years; and Lucas D. Jackson has been practicing law for 5 years. (*Hyatt* Pls.' Mot. Ex. C at 3–4).

Plaintiffs also attach the Laffey and Fitzpatrick Matrices—"which [are] based on rates for either the greater Washington, D.C. metropolitan area or the District of Columbia." 163 Fed. Cl. at 27.

| Years Exp. | 2022-23 | 2023-24 |
|---|---|---|
| 20+ | $997.00 | $1,057.00 |
| 11-19 | $829.00 | $878.00 |
| 8-10 | $733.00 | $777.00 |
| 4-7 | $508.00 | $538.00 |
| 1-3 | $413.00 | $437.00 |
| Paralegal | $225.00 | $239.00 |

(*Hyatt* Pls.' Mot. at 19 (citing http://www.laffeymatrix.com/see.html); *Nicholson* Pls.' Mot. at 14 (citing same)).

| Years Exp. | 2023 | 2024 | Years Exp. | 2023 | 2024 |
|---|---|---|---|---|---|
| 20 | $735.00 | $787.00 | 9 | $612.00 | $655.00 |
| 19 | $726.00 | $778.00 | 8 | $598.00 | $640.00 |
| 18 | $717.00 | $768.00 | 7 | $584.00 | $625.00 |
| 17 | $707.00 | $757.00 | 6 | $568.00 | $608.00 |
| 16 | $697.00 | $746.00 | 5 | $553.00 | $592.00 |
| 15 | $687.00 | $736.00 | 4 | $536.00 | $574.00 |
| 14 | $674.00 | $722.00 | 3 | $520.00 | $557.00 |
| 13 | $664.00 | $711.00 | 2 | $502.00 | $538.00 |
| 12 | $652.00 | $698.00 | 1 | $485.00 | $519.00 |
| 11 | $638.00 | $683.00 | 0 | $467.00 | $500.00 |
| 10 | $625.00 | $669.00 | Paralegals | $220.00 | $236.00 |

(*Hyatt* Pls.' Mot. at 19 (citing https://www.justice.gov/usao-dc/media/1353286/dl?inline); *Nicholson* Pls.' Mot. at 14 (citing same)). Notably, Plaintiffs' requested fees are less than each of these matrices, a fact Judge Sweeney found to be persuasive in considering the matrices in *Bradley v. United States*. 164 Fed. Cl. at 254 (citing *Biery v. United States*, 818 F.3d 704, 714 (Fed. Cir. 2016) (holding that the Court of Federal Claims had the discretion to use one of the updated Laffey matrices to compute the lodestar amount in a Trails Act case); *McCarty*, 142 Fed. Cl. at 624 (awarding attorneys' fees in a Trails Act case based on the USAO matrix); *Campbell*, 138 Fed. Cl. at 76–77 (observing that "rails-to-trails takings claims can be complex" and using two adjusted Laffey matrices as evidence of reasonable hourly rates); *Hardy*, 157 Fed. Cl. at 472 (characterizing experience in Trails Act cases as "specialized experience in . . . a niche area of law"); *Gregory v. United States*, 110 Fed. Cl. 400, 406 (2013) (remarking that Trails Act litigation is "complex" and "highly specialized," and that "[v]ery few firms in the country have the willingness and the expertise to take on these" cases).

The United States argues that the Court should apply the same hourly rate that another judge of this Court applied in *Arnold*, which largely applied to the same attorneys for litigation spanning from 2019–2022. (Def.'s Resp. at 12); *Arnold*, 163 Fed. Cl. at 30. Based on this, the United States suggests that the Court implement the following fee schedule:

| Role | Reduced Rate |
|------|--------------|
| Member | $450 |
| Associate | $300 |
| Paralegal | $150 |
| Law Clerk | $125 |

(Def.'s Resp. at 12). This interpretation misrepresents the holding in *Arnold* by neglecting the significance of pay differentials based on years of experience. This misinterpretation effectively minimizes or eliminates the acknowledged disparity in compensation associated with varying levels of professional experience. *Arnold*, 163 Fed. Cl. at 30 (indicating that rates listed counsel "by position and years of experience and, as adjusted: partners with 25 or more years of experience a rate of $500 per hour; partners with 15–25 years of experience a rate of $450 per hour; and partners with less than 15 years of experience a rate of $400 per hour."). It also ignores the time that has passed since *Arnold* was argued and issued.[13]

Further, in *Arnold*, the United States rebutted plaintiffs' requested fees with a "declaration of Laura A. Malowane, Ph.D., a noted economist and an attorney who represents that she has 'extensive experience in analyzing and testifying on issues relating to the awarding of attorney['s] fees[.]'" 163 Fed. Cl. at 30. The Court here does not have the benefit of any such rebuttal. Although plaintiffs bear the initial burden of proving the reasonableness of their fees, defendants are not absolved of their responsibility to challenge or rebut any evidence presented by the plaintiffs that they believe is insufficient or inaccurate. The United States' sole argument for a reduction rests on the incorrect application of a two-year-old, non-binding fee schedule, an approach this Court finds to be inappropriate.

The Court finds that Plaintiffs have met their burden of demonstrating the reasonableness of their requested fee rate through the submission of supporting documentation, such as affidavits from experienced attorneys, comprehensive attorney fee matrices, and persuasive legal authority. Consequently, the Court finds that the Lewis Rice requested rates "are in line with those prevailing in the community for similar services by lawyers [and paralegals] of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11.

---

[13] Plaintiffs correctly note that the fees advocated for by the United States are less than "rates deemed reasonable for Ms. Brinton and Ms. Largent for work completed between 2015 and 2017[.]" (Pls.' Reply at 9–10 (citing *McCarty v. United States*, 142 Fed. Cl. 616, 624 (2019) (allowing hourly rates of $465–$516 for Ms. Brinton and Ms. Largent for 2015–16); *Campbell v United States*, 138 Fed. Cl. 65, 78 (2018), ($550/hour for work between 2015-17)).

2.    **Tuggle Duggins**

Finally, Tuggle Duggins submitted the following rates for *Hyatt:*

| Timekeeper | 2023 | 2024 |
|---|---|---|
| J. Nathan Duggins | | $ 520.00 |
| Jason B. Sparrow | $ 385.00 | $ 405.00 |
| Andrew B. Bowman | $ 350.00 | $ 370.00 |
| Shawn V. Poole | $ 260.00 | $ 290.00 |

(*Hyatt* Pls.' Mot. at 26). In support, they attach a self-serving affidavit from J. Nathan Duggins, III, citing a variety of North Carolina District Court cases where these fees have been found to be reasonable. (*Hyatt* Pls.' Mot. Ex. I).

The United States' position is that the Tuggle Duggins fees were not reimbursable, thus there is no substantive argument as to the proposed rates. (Def.'s Resp. at 12, 18). For the reasons stated above, that argument is rejected. Because the United States has failed to offer any specific arguments or evidence regarding the appropriate calculation of attorney's fee, the Court finds the declaration provided by Plaintiffs' counsel to be sufficient for determining a reasonable fee award.[14]

---

[14] Notably, the support of case law in the self-serving affidavit is compelling. (*See North Carolina Green Party v. North Carolina State Bd. of Elections*, No. 5:22-CV-276-D, 2024 WL 1419752, at *6 (E.D.N.C. Apr. 2, 2024) (finding $450.00 per hour for partner level work to be reasonable); *Hermosa v. Spellane*, 895 S.E.2d 626, 2023 WL 8431824, *7 (N.C. Ct. App. 2023) (finding $395.00 per hour for partner level work to be reasonable); *Brown v. Bones Jones Brands, LLC*, No. 1:22-CV-00228-MR-WCM, 2023 WL 5767468, at *4 (W.D.N.C. Sept. 6, 2023) (finding $500.00 per hour for partner level work and $250.00 to $300.00 per hour for associate level work to be reasonable); *Johnson v. Palms Assocs., LLC*, No. 1:20-CV-1049, 2023 WL 5276348, at *4 (M.D.N.C. Aug. 16, 2023) (finding $550.00 to $700.00 per hour for partner level work, $350.00 for associate level work, and $175.00 for staff and paralegal level work completed between 2020 and 2023 to be reasonable); *Linnins v. Haeco Americas, Inc.*, No. 1:16CV486, 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (finding $600.00 to $700.00 per hour for partner level work conducted in 2016 to 2018 to be reasonable); *Xfinity Mobile v. D Town Trading Inc.*, 669 F. Supp. 3d 552, 554 (W.D.N.C. 2023) (finding $475.00 to $615.00 per hour for partner level work and $400.00 per hour for associate level work conducted between 2020 to 2023 to be reasonable); *Wallace v. Greystar Real Est. Partners, LLC*, No. 1:18CV501, 2022 WL 3908800, at *3 (M.D.N.C. Aug. 30, 2022) (finding $650.00 per hour for partner level work, $450.00 per hour for associate level work, and $200.00 per hour for paralegal work, all conducted between 2018 to 2022 to be reasonable)).

### III.   Conclusion

The spirit of the URA is intended to hold the United States accountable in takings cases by deterring unnecessary litigation. The prospect of paying substantial attorney's fees incentivizes the government to negotiate fairly, minimize delays, and avoid frivolous takings. Moreover, URA fees compensate property owners for the expenses incurred in defending their rights and securing just compensation. This helps level the playing field, as the government possesses significant resources. By requiring the government to pay reasonable attorney's fees, the URA helps enforce the Fifth Amendment's guarantee of just compensation and promotes transparency and accountability in government acquisition processes. The government's characterization of this litigation as "straightforward" is inapposite given its unwillingness to even respond to the Claim's Book process and insistence on contesting liability. (Def.'s Resp. at 16). In this case, Plaintiffs have shown that they are entitled to their requested fees.

Plaintiffs' Motions for Attorneys' Fees, (*Hyatt* Pls.' Mot., ECF No. 38; *Nicholson* Pls.' Mot., ECF No. 31), are hereby **GRANTED**. The Court accepts and awards the following fees:

| Case/Firm | Hours | Attorneys' Fees | Expenses[15] | Total |
|---|---|---|---|---|
| *Nicholson* Lewis Rice | 213.4 | $103,668.00 | $1,832.88 | **$105,500.88** |
| *Hyatt* Lewis Rice | 263.4 | $129,861.50 | $2,392.04 | **$132,253.54** |
| *Hyatt* Tuggle Duggins | 22.5 | $8,211.00 | $0 | **$8,211.00** |

Given that all other matters in this case have settled, (*Hyatt* ECF No. 35; *Nicholson* ECF No. 30), the Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/   David A. Tapp
DAVID A. TAPP, Judge

---

[15] The United States does not contest the requested amount to reimburse expenses.